## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DIANE COLUZZI, MICHAEL MARCHELOS, and GARY LIEB individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA, N.A., <br><br> Defendant. | Case No. 1:23-06885 <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiffs Diane Coluzzi, Michael Marchelos, and Gary Lieb ("Plaintiffs") bring this Class and Collective Action Complaint against Defendant Bank of America, N.A. ("Defendant" or "Bank of America") on behalf of themselves and all others similarly situated, stating and alleging the following:

### NATURE OF THE ACTION

1.      In response to the COVID-19 outbreak, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), which allocated significant funding for loans to small businesses affected by the pandemic and resulting economic downturn. This loan measure—dubbed the Paycheck Protection Program (PPP)—was to be administered by the federal Small Business Administration in conjunction with the Department of the Treasury.

2.      But the federal government lacked the capacity to administer this program on its own. Instead, it turned to large financial institutions like Bank of America, which had the existing infrastructure to process large numbers of loans.

3.      For companies like Bank of America, the task of processing and disbursing loans through the PPP program promised to be a highly profitable one. Financial institutions were paid

a percentage of each loan they administered on a sliding scale; 5% of each loan up to $350,000 and 1% of each loan over $2 million.

4.      But for the loan officers and consultants required to work on the program, prospects were much less rosy. Most of these workers were paid on an hourly basis and made much of their income through commissions on loans they originated and processed. But PPP loans promised no such commissions, and instead would take the workers' time away from more profitable, commissioned work.

5.      To induce workers to remain with Bank of America and induce them to work steadily and efficiently on the company's lucrative PPP loan program and to replace otherwise profitable commissions for loan origination, Bank of America offered nondiscretionary incentive pay related to processing PPP loans (hereafter "nondiscretionary PPP incentive pay"). For some, this nondiscretionary PPP incentive pay was calculated based on their average earnings, including all commissions, for the three months preceding the start of the pandemic. For others, it took the form of a straightforward increase to their usual hourly pay rate. And on occasion, the company offered premium pay rates to employees who worked arduous extra hours on certain days contributing to the PPP loan program.

6.      But while this nondiscretionary PPP incentive pay rate was used to calculate the workers' regular hour earnings, it was not reflected in their overtime pay. Instead, overtime was paid at a rate of one-and-a-half times the worker's *lower, pre-pandemic* base hourly rate, without including the nondiscretionary PPP incentive pay. This meant that workers were not paid overtime based on their actual regular rate of pay for a given workweek, but rather were paid overtime calculated from a lower amount.

7.     This is in contrast to how the company treated the loan officers' commissions both before and after the PPP program.  For example, at the end of each month, the loan officers' commission pay is retroactively added to the regular rate of pay for any workweeks where the given loan officer worked more than 40 hours.  However, for this nondiscretionary PPP incentive pay—that was intended to approximate and replace commission pay—Bank of America refused to include it in the regular rate of pay.

8.     As a result of this practice, workers who stepped up to the critical work of administering the PPP loan program were short-changed the wages they were owed. As explained below, many Bank of America employees, including Plaintiffs, worked long hours and significant overtime throughout the pandemic to ensure the nation's small businesses had the resources they needed to stay afloat. This suit seeks to recover for them the wages and penalties they are owed under the law.

## PARTIES, JURISDICTION, AND VENUE

9.     Plaintiff Diane Coluzzi is a citizen of New York who at all times relevant to this suit worked for Bank of America within the state of New York. Her written Consent to Join this case is attached and incorporated as **Exhibit 1**.

10.     Plaintiff Michael Marchelos is a citizen of New York who at all times relevant to this suit worked for Bank of America within the state of New York. His written Consent to Join this case is attached and incorporated as **Exhibit 2**.

11.     Plaintiff Gary Lieb is a citizen of New York who at all times relevant to this suit worked for Bank of America within the state of New York. His written Consent to Join this case is attached and incorporated as **Exhibit 3**.

12.    Defendant Bank of America, N.A. is a national association having its principal place of business in North Carolina.

13.    This Court has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000.00, exclusive of interest, attorneys' fees, and costs; and (3) Bank of America and at least one class member are citizens of different states.

14.    This Court also has subject matter jurisdiction over the Fair Labor Standards Act claims of Plaintiffs and all others similarly situated pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and over all related state law claims pursuant to 28 U.S.C. § 1367.

15.    This Court has personal jurisdiction over Bank of America because it is authorized to do business and regularly conducts business in New York, and the claims of Plaintiffs and the Class they seek to represent arose within the state of New York.

16.    Venue is proper in this district under 28 U.S.C. § 1391(b) because Bank of America resides within this district, and a substantial part of the events giving rise to the claims at issue occurred in this district, as one or more Plaintiffs and putative class members performed work subject to this suit within the boundaries of this district.

## FACTS RELEVANT TO ALL CLAIMS

17.    Bank of America began administering and processing PPP loans on or about April 1, 2020, whereupon the company started offering loan officers, loan consultants, and others nondiscretionary PPP incentive pay for work on the program. Upon information and belief, this program and incentive pay continued until approximately May 2021.

18.     For the first few weeks of the PPP program, Bank of America demonstrated that it understood how to pay its loan officers in compliance with the Fair Labor Standards Act and New York Labor Law by including nondiscretionary PPP incentive pay as part of these workers' regular rates when they worked over 40 hours in a workweek.

19.     That changed on or about April 27, 2020. At that point, the company decided that these new rates were "inflated," at least for the purposes of calculating overtime. It then reverted to using employees' earlier base hourly rate that was in effect before the PPP loan program began when determining the employee's "regular rate" when calculating their compensation for any overtime hours worked.

20.     As a matter of law, and as Bak of America was fully aware, that determination was incorrect. Instead, an employee's regular rate must be calculated by including all renumeration paid to an employee (subject to statutory exceptions not relevant here) actually paid the employee for each separate workweek. 29 C.F.R. § 778.108; N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5.

20.     Nondiscretionary PPP incentive pay was often denoted on employees' paystubs as a miscellaneous nondiscretionary award ("Misc NonDiscr Awrd"). These amounts were excluded from the employee's regular rate of pay when calculating overtime.

21.     Nondiscretionary PPP incentive pay included an increased hourly rate for regular, non-overtime hours worked. Upon information and belief, for many employees, this rate was calculated based on an average of their total compensation, including all commissions, in addition to hourly earnings, for the months of December 2019 through February 2020.

22.     Nondiscretionary PPP incentive pay also included premium rates offered for extra work on certain days for work on the program. For instance, during the summer of 2020, some

employees were offered premium pay doubling their hourly rate for extra and arduous work spent on the PPP loan program. And, for example, for the weekend of May 9-11, 2020, Bank of America offered employees three times their hourly base pay rate for work on the PPP loan program.

23.     This premium pay was intended to induce employees to perform more work on the PPP loan program, work that was difficult, unfamiliar, arduous, and (due to the lack of commissions) relatively unremunerative for employees, but highly lucrative for Bank of America. The premium pay for extra work was available only for work on the PPP loan program, and only during certain set times. It was not limited to non-exempt hourly workers, as salaried employees were eligible for similar incentive payments.

24.     Neither form of nondiscretionary PPP incentive pay—the hourly rate increase or the premium pay for extra work—were included in employees' regular rates when Bank of America calculated and paid their overtime.

25.     By failing to include nondiscretionary PPP incentive pay—a significant part of an employee's total weekly earnings—Bank of America violated the law and miscalculated its employees' regular rates of pay.

26.     This was compounded by the fact that Bank of America required these employees to perform extraordinary amounts of overtime, often exceeding 70 hours of work per week.  Thus, failing to include this compensation in the workers' regular rate of pay meant that they were significantly underpaid what they were owed.

27.     As a result, Bank of America employees earning nondiscretionary PPP incentive pay were underpaid for each hour of overtime they worked.

28.     Plaintiff Diane Coluzzi was an hourly, non-exempt senior financial lending officer who worked for Bank of America in the state of New York from 1998 through May 2021. She

worked on the PPP loan program and received nondiscretionary PPP incentive pay that was excluded from her regular rate when calculating and paying overtime.

29.    Throughout the PPP loan program, Plaintiff Coluzzi worked a substantial amount of overtime hours, often more than thirty (30) in a workweek. These overtime hours were paid at a rate of one-and-a-half times her lower, base hourly rate, and did not include her nondiscretionary PPP incentive pay.

30.    For instance, during the two-week pay period from May 11, 2020 through May 24, 2020, Plaintiff Coluzzi worked 74.733 overtime hours. This work was paid at a rate of $30 per hour, or one-and-a-half times her base hourly rate of $20 per hour. Bank of America did not include the nondiscretionary PPP incentive pay she earned during that period as part of her regular rate, and as a result, underpaid her for her overtime hours worked. These long hours were emblematic of the extraordinarily arduous work Bank of America required of its employees to administer the PPP loan program.

31.    Plaintiff Michael Marchelos was an hourly, non-exempt mortgage loan officer who worked for Bank of America in the state of New York from September 2019 through May 2021. He worked on the PPP loan program and received nondiscretionary PPP incentive pay that was excluded from his regular rate when calculating and paying overtime.

32.    Throughout the PPP loan program, Plaintiff Marchelos worked a substantial amount of overtime hours, often more than thirty (30) in a workweek. These overtime hours were paid at a rate of one-and-a-half times his earlier, lower hourly rate in effect prior to the PPP loan program and did not include his nondiscretionary PPP incentive pay.

33.    For instance, during the two-week pay period from June 8, 2020 through June 21, 2020, Plaintiff Marchelos worked 68.95 overtime hours. This work was paid at a rate of $30 per

hour, or one-and-a-half times his base hourly rate of $20 per hour. Bank of America did not include the nondiscretionary PPP incentive pay he earned during that period as part of his regular rate, and as a result, underpaid him for his overtime hours worked.

34.    Plaintiff Gary Lieb was an hourly, non-exempt credit solutions advisor who worked for Bank of America in the state of New York from April 2018 through July 2021. He worked on the PPP loan program and received nondiscretionary PPP incentive pay that was excluded from his regular rate when calculating and paying overtime.

35.    Throughout the PPP loan program, Plaintiff Lieb worked a substantial amount of overtime hours, often more than thirty (30) in a workweek. These overtime hours were paid at a rate of one-and-a-half times his earlier, lower hourly rate in effect prior to the PPP loan program and did not include his nondiscretionary PPP incentive pay.

36.    As a result of Bank of America improperly using lower rates when calculating overtime, Plaintiffs and all similarly situated employees were paid less than the amount to which they were entitled by law for each hour of overtime worked.

37.    Additionally, and as a consequence of this violation, Plaintiffs and all similarly situated employees were also not provided accurate wage statements and notices as required by New York's Wage Theft Prevention Act.

## ALLEGATIONS APPLICABLE TO THE FLSA

38.    At all times material herein, Plaintiffs and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

39.    The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in

the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

40.    Bank of America is subject to the minimum wage and overtime pay requirements of the FLSA because they operate an enterprise engaged in interstate commerce and its employees are engaged in commerce.

41.    During all relevant times to this action, Bank of America acted as the "employer" of Plaintiffs and all similarly situated employees within the meaning of the FLSA.  29 U.S.C. § 203(d).

42.    During all times relevant to this action, Plaintiffs and all similarly situated employees were Bank of America's "employees" within the meaning of the FLSA.  29 U.S.C. § 203(e).

43.    Pursuant to the FLSA, employees are entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  29 U.S.C. § 207(a).

44.    Although the FLSA contains some exceptions (or exemptions) from the overtime requirements, none of those exceptions (or exemptions) applies here.

45.    Plaintiffs and all similarly situated employees are victims of uniform and unlawful compensation policies.

46.    Plaintiffs and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three (3) years preceding the filing of the Class and Collective Action Complaint, plus periods of equitable tolling, because Bank of America acted willfully and knew, or showed reckless disregard of whether its conduct was

prohibited by the FLSA. Bank of America's policies alleged herein constituted a willful violation of the FLSA in that, *inter alia*:

- At the start of the PPP loan program, Bank of America initially calculated and paid overtime correctly. From approximately April 1, 2020 to April 27, 2020, Bank of America included nondiscretionary PPP incentive pay in its employees' regular rates when paying overtime. However, on a conference call with employees working on the PPP loan program, Bank of America incorrectly and misleadingly claimed that these overtime rates were "inflated", and stated that starting April 27, 2020, rates used to calculate overtime would revert to the employees' lower base hourly rate in effect prior to the start of the program;

- Bank of America attempted to conceal the true nature of its overtime pay practices relating to employees working on the PPP loan program, including by disseminating opaque, confusing, and misleading communications and policies concerning how overtime was calculated and paid, by failing to explain to employees how their pay was calculated, and by providing paystubs and records that failed to convey how the amount paid was calculated;

- To further this deception, Bank of America took pains to ensure that its overtime pay practices for employees working on the PPP loan program were not put in writing. For instance, during the aforementioned conference call discussing compensation and payment of overtime for the PPP loan program, Bank of America management told employees "we're not circulating this in writing, so do listen carefully." On other occasions, employees were explicitly

instructed not to forward emails regarding compensation for work on the PPP loan program to anyone outside the Bank of America organization; and

- Bank of America calculated portions of the employees' nondiscretionary PPP incentive pay based on the employees' total compensation, including all commissions, from the months of December 2019 to February 2020, and this pay was intended to compensate the employees for their commission earnings, which would not be available for their work on the PPP loan program. Bank of America knew that commission earnings were unambiguously required to be included in its employees' regular rate when calculating overtime under the FLSA.

47.    Bank of America has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Alternatively, should the Court find Bank of America acted in good faith or with reasonable grounds in failing to pay overtime compensation, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

48.    As a result of these violations of the FLSA's overtime pay provisions, compensation has been unlawfully withheld by Bank of America from Plaintiffs and all similarly situated employees.  Accordingly, pursuant to 29 U.S.C. § 216(b), Bank of America is liable for the unpaid overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## ALLEGATIONS APPLICABLE TO THE NEW YORK
## <u>STATE LAW CLAIMS (COUNTS II-IV)</u>

49.     At all times relevant, Plaintiffs and all similarly situated employees have been entitled to the rights, protections, and benefits provided under the New York Labor Law and the New York Wage Theft Prevention Act.

50.     During all times relevant to this action, Bank of America was the "employer" of Plaintiffs and the class members within the meaning of New York law, or otherwise subject to its statutory provisions.  N.Y. Lab. Law § 190(3).

51.     During all times relevant to this action, Plaintiffs and the class members were Bank of America's "employees" within the meaning of New York law. N.Y. Lab. Law § 190(2).

52.     Plaintiffs and the class members are victims of uniform (and uniformly deficient) compensation and notice policies in violation of New York law.

53.     Plaintiffs and the Class are entitled to recover all damages, costs, attorney fees, statutory penalties, liquidated damages, and other recoverable items provided pursuant to the New York Labor Law and Wage Theft Prevention Act.

## <u>CLASS AND COLLECTIVE ACTION ALLEGATIONS</u>

54.      Plaintiffs brings Count I, the FLSA claim arising out of Bank of America's overtime violations, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following collective action class:

> All current and former non-exempt Bank of America employees who received any nondiscretionary PPP incentive payments, however denoted, that were not included in their regular rate of pay in workweeks for which they worked more than forty (40) hours within the state of New York at any time from three (3) years prior to the filing of the initial Class and Collective Action Complaint to the present, plus any applicable tolling period(s).

Plaintiffs' FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C.
§ 216(b).

55.     Plaintiffs, individually and on behalf of all others similarly situated, seek relief on
a collective basis challenging Bank of America's above-described FLSA violations.  The number
and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined
from Bank of America's records, and potential opt-in plaintiffs may easily and quickly be notified
of the pendency of this action.

56.     Plaintiffs bring Count II (Unpaid Overtime in Violation of the New York Labor
Law), Count III (Failure to Provide Wage Statements in Violation of the New York Wage Theft
Prevention Act), and Count IV (Failure to Provide Wage Notices in Violation of the New York
Wage Theft Prevention Act) pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2),
23(b)(3) and/or 23(c)(4). Plaintiffs bring this action on behalf of themselves and all others similarly
situated, and seeks to represent the following class:

> All current and former non-exempt Bank of America employees who received any
> nondiscretionary PPP incentive payments, however denoted, that were not included
> in their regular rate of pay in workweeks for which they worked more than forty
> (40) hours within the state of New York at any time from six (6) years prior to the
> filing of the initial Class and Collective Action Complaint to the present, plus and
> applicable tolling period(s).

Excluded from the Classes are Bank of America, any entity in which Bank of America has a
controlling interest, any of the officers or directors of Bank of America, the legal representatives,
heirs, successors, and assigns of Bank of America, anyone employed with Plaintiffs' counsel's
firms, and any Judge to whom this case is assigned, and his or her immediate family.

57.     Plaintiffs' New York state law claims (Counts II-V) described in detail below,
satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of a
class action pursuant to Fed. R. Civ. P. 23.

58.    The class numbers in the hundreds, if not thousands, of persons.  As a result, joinder of all class members in a single action is impracticable.  Class members may be informed of the pendency of this action through regular mail, e-mail, and/or posting of an approved notice.

59.    There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members.  The questions of law and fact common to the classes arising from Bank of America's actions include, without limitation, the following:

- Whether Bank of America violated the New York Labor Law when it excluded nondiscretionary PPP incentive payments from Plaintiffs and similarly situated employees' regular rates of pay;

- Whether Bank of America violated the New York Labor Law when it calculated and paid Plaintiffs and similarly situated employees' overtime pay as 1.5 times their lower, pre-PPP loan program rates of pay;

- Whether Bank of America's wage notice forms accurately listed all required information, including but not limited to the employee's regular hourly rate and overtime rate of pay;

- Whether Bank of America provided wage statements accurately listing all required information, including but not limited to the employee's regular hourly rate and overtime rate of pay;

- Whether Bank of America timely paid all wages due to Plaintiffs and similarly situated employees as required by law; and

- Whether Bank of America's conduct and practices were willful and lacking a good faith legal basis.

60.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.  Plaintiffs' claims are typical of those of the respective classes in that class members have been employed in the same or similar positions as Plaintiffs and were subject to the same or similar unlawful pay practices as Plaintiffs.  A class action is the superior method for the fair and efficient adjudication of Plaintiffs' claims.  Bank of America has acted or refused to act on grounds generally applicable to the class.  The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.  Plaintiffs are adequate representatives because they are members of the classes they seek to represent, and their interests do not conflict with the interests of the members of those classes.  The interests of the members of the classes will be fairly and adequately protected by Plaintiffs and their undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation.

61.     Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy.  It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in consistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

### <u>COUNT I - FLSA (Unpaid Overtime Wages)</u>
### Arising Out of Bank of America's Regular Rate Miscalculation Policy

63.     Plaintiffs re-allege the allegations set forth above.

64.     Bank of America violated the FLSA by failing to pay Plaintiffs and all other similarly situated employees for all overtime hours worked at one and one-half times the regular rate for all hours worked in excess of forty hours in a workweek.

65.     Specifically, the FLSA requires that employees are paid one and one-half times their "regular rate" of pay.  The "regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109.

66.     In calculating Plaintiffs' and other similarly situated employees' overtime pay, Bank of America improperly excluded a significant portion of the employees' total compensation for the workweek, namely, their nondiscretionary PPP incentive pay. As a result, Plaintiffs and other similarly situated employees' overtime pay was not based on the proper regular rate of pay under the FLSA, but instead calculated from a lower amount.

67.     Due to this miscalculation, Plaintiffs and other similarly situated employees were paid less than required under the FLSA for each overtime hour worked.

68.     Bank of America has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay pursuant to 29 U.S.C. § 216(b). Alternatively, should the Court find Bank of America did act with good faith and reasonable grounds in failing to pay overtime pay, Plaintiffs and other similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

WHEREFORE, on Count I of this Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

    a.    Issue notice to all similarly situated employees of Bank of America informing them of their right to file consents to join the FLSA portion of this action;

    b.    Award Plaintiffs and all similarly situated employees damages for unpaid overtime wages under 29 U.S.C. § 216(b);

    c.    Award Plaintiffs and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

    d.    Award Plaintiffs and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

    e.    Award Plaintiffs and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

    f.    Award Plaintiffs and all similarly situated employees such other relief as the Court deems fair and equitable.

**COUNT II – New York Labor Law (Unpaid Overtime Wages)**
**Arising Out of Bank of America's Regular Rate Miscalculation Policy**

69.    Plaintiffs re-allege the allegations set forth above.

70.    Bank of America violated the New York Labor Law by failing to pay Plaintiffs and all other similarly situated employees for all overtime hours worked at one and one-half times the regular rate for all hours worked in excess of forty hours in a workweek.

71.    Specifically, New York law provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" for all working time over forty (40) hours in a workweek. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-3.2

72.    In calculating Plaintiffs' and other similarly situated employees' overtime pay, Bank of America improperly excluded a significant item of the employees' total compensation for the workweek, namely, their nondiscretionary PPP incentive pay. As a result, Plaintiffs and other similarly situated employees' overtime pay was not based on the proper regular rate of pay under New York law, but instead calculated from a lower amount.

73.    Due to this miscalculation, Plaintiffs and other similarly situated employees were paid less than required under the New York Labor Law for each overtime hour worked.

74.    Bank of America has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the New York Labor Law, and as a result thereof, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay pursuant to N.Y. Lab. Law § 198(1-a).

WHEREFORE, on Count II of this Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

a.    Certify the state law claim set forth in Count II above as a class action pursuant to Fed. R. Civ. P. 23;

b.    Award Plaintiffs and the Class damages for the amount of unpaid wages due;

c.    Award Plaintiffs and the Class liquidated damages under N.Y. Lab. Law § 198(1-a);

d.      Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided under N.Y. Lab. Law § 198(1-a);

e.      Award Plaintiffs and the Class attorneys' fees and costs as allowed under N.Y. Lab. Law § 198(1-a); and

f.      Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

**COUNT III – New York Wage Theft Prevention Act**
**Arising Out of Bank of America's Wage Statement Violations**

75.    Plaintiffs re-allege the allegations set forth above.

76.    New York's Wage Theft Prevention Act requires employers to furnish each employee with a statement with every payment of wages that includes, among other items, "the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." N.Y. Lab. Law § 195(3).

77.    Plaintiffs and other similarly situated employees were not furnished accurate wage statements with their paychecks because, *inter alia*, their listed "regular hourly rate" improperly excluded the nondiscretionary PPP incentive payments they received as part of their earnings. Additionally, the listed "overtime rate of pay" was incorrect and deficient as a matter of law.

78.    Further, many of their wage statements did not list "the number of regular hours worked, and the number of overtime hours worked."

79.    Because of these deficiencies, and because of the vexing, confusing, and incomplete manner in which their wage statements were formatted, Plaintiffs and other similarly situated employees were unable to realize that they were being underpaid but were instead led to believe that they were paid all wages to which they were entitled, thereby depriving them of the opportunity to take any corrective action.

80.     Bank of America did not make complete and timely payment of all wages due under New York law to Plaintiffs and other similarly situated employees, as it failed to properly pay said employees for overtime work performed as alleged herein. As a result, it is not entitled to an affirmative defense pursuant to N.Y. Lab. Law § 198 (1-d).

81.     Because Plaintiffs and other similarly situated employees were not provided compliant and accurate wage statements attendant to having not been paid all wages due under the New York Labor Law by Bank of America, they are entitled to recover statutory penalties.

WHEREFORE, on Count III of this Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

a.    Certify the state law claim set forth in Count III above as a class action pursuant to Fed. R. Civ. P. 23;

b.    Award Plaintiffs and the Class statutory damages and penalties as provided under N.Y. Lab. Law § 198(1-d);

c.    Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided under N.Y. Lab. Law § 198(1-a);

d.    Award Plaintiffs and the Class attorneys' fees and costs as allowed under N.Y. Lab. Law § 198(1-d); and

e.    Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

**COUNT IV – New York Wage Theft Prevention Act**
**Arising Out of Bank of America's Wage Notice Violations**

82.     Plaintiffs re-allege the allegations set forth above.

83.     New York's Wage Theft Prevention Act requires employers provide each of their employees written notice of several wage-related items, including the employee's "regular hourly rate and overtime rate of pay." N.Y. Lab. Law § 195(1-a).

84.     This notice must be provided "at the time of hiring", as well as seven days prior to any changes to the terms taking effect, "unless such changes are reflected on the wage statement furnished in accordance with subdivision three of [the law]", and the employer must retain the signed notice form for six years. *Id.*; *see also* N.Y. Lab. Law § 195(2).

85.     Bank of America did not provide a notice to Plaintiffs and other similarly situated employees seven days prior to the changes to their "regular hourly rate and overtime rate of pay" when the PPP loan program went into effect. Nor did it provide notice when, on or about April 27, 2020, their "regular hourly rate and overtime rate of pay" was again changed to exclude nondiscretionary PPP incentive payments from their overtime calculations.

86.     For the reasons alleged in Count III, these changes were also not reflected in wage statements provided to Plaintiffs and similarly situated employees.

87.     Because of these deficiencies, Plaintiffs and other similarly situated employees were unable to realize that they were being underpaid but were instead led to believe that they were paid all wages to which they were entitled, thereby depriving them of the opportunity to take any corrective action.

88.     Bank of America did not make complete and timely payment of all wages due under New York law to Plaintiffs and other similarly situated employees, as it failed to properly pay said employees for overtime work performed as alleged herein. As a result, it is not entitled to an affirmative defense pursuant to N.Y. Lab. Law § 198 (1-b).

89.    Because Plaintiffs and other similarly situated employees were not provided accurate and timely written wage notices attendant to having not been paid all wages due under the New York Labor Law by Bank of America, they are entitled to recover statutory penalties.

WHEREFORE, on Count IV of this Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

f.      Certify the state law claim set forth in Count IV above as a class action pursuant to Fed. R. Civ. P. 23;

g.      Award Plaintiffs and the Class statutory damages and penalties as provided under N.Y. Lab. Law § 198(1-b);

h.      Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided under N.Y. Lab. Law § 198(1-a);

i.      Award Plaintiffs and the Class attorneys' fees and costs as allowed under N.Y. Lab. Law § 198(1-b); and

j.      Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

**COUNT V – New York Labor Law § 191 (Frequency of Payments)**
**Arising Out of Bank of America's Failure to Timely Pay All Wages Due**

90.    Plaintiffs re-allege the allegations set forth above.

91.    Pursuant to New York Labor Law § 191, Bank of America was required to pay Plaintiffs and other similarly situated employees all wages owed to them in regular intervals. Additionally, Plaintiffs, along with all other former Bank of America employees were entitled pursuant to § 191 to all wages owed to them upon termination of their employment.

92.     As a result of Bank of America's practice of miscalculating and failing to pay all overtime owed, Plaintiffs and other similarly situated employees were not paid the full amount of wages owed to them at the requisite intervals or upon termination of their employment.

93.     As a result, Plaintiffs and other similarly situated employees are authorized to recover liquidated damages, penalties, and other damages provided by statute.

WHEREFORE, on Count V of this Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Bank of America and prays this Court:

    a.  Certify the state law claim set forth in Count V above as a class action pursuant to Fed. R. Civ. P. 23;

    b.  Award Plaintiffs and the Class damages for the amount of untimely or unpaid wages due;

    c.  Award Plaintiffs and the Class liquidated damages under N.Y. Lab. Law § 198(1-a);

    d.  Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided under N.Y. Lab. Law § 198(1-a);

    e.  Award Plaintiffs and the Class attorneys' fees and costs as allowed under N.Y. Lab. Law § 198(1-a); and

    f.  Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury of all issues so triable.

Dated:  August 4, 2023                              Respectfully submitted,

                                                  **GETMAN, SWEENEY & DUNN PLLC**

                                                  */s/ Matt Dunn*
                                                  Matt Dunn
     260 Fair Street
     Kingston, NY 12401
     Telephone:     (845) 255-9370
     Facsimile:      (845) 255-8649
     mdunn@getmansweeney.com

     **STUEVE SIEGEL HANSON LLP**
     George A. Hanson, *pro hac vice forthcoming*
     Alexander T. Ricke, *pro hac vice forthcoming*
     Caleb J. Wagner, *pro hac vice forthcoming*
     Yasmin Zainulbhai, S.D.N.Y # YZ2351
     460 Nichols Road, Suite 200
     Kansas City, Missouri 64112
     Telephone:     (816) 714-7100
     Facsimile:      (816) 714-7101
     hanson@stuevesiegel.com
     ricke@stuevesiegel.com
     wagner@stuevesiegel.com
     zainulbhai@stuevesiegel.com

     **ATTORNEYS FOR PLAINTIFFS**